644 P.2d 541

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Robert MARTINEZ,
Defendant-Appellant.**

No. 5427.

Court of Appeals of New Mexico.

March 16, 1982.

Certiorari Denied May 6, 1982.

**28**

Elliot L. Weinreb, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Sante Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Defendant appeals his convictions of burglary and C.S.P.II (criminal sexual penetration in the second degree). Issues listed in the docketing statement, but not briefed, were abandoned. *State v. Brown*, 95 N.M. 3, 617 P.2d 1324 (Ct.App.1980). The five issues briefed are concerned with the propriety of the C.S.P. conviction; the burglary conviction is not attacked. We: (1) answer four issues summarily, and (2) discuss C.S.P. perpetrated in the commission of another felony.

There is evidence that defendant entered a trailer residence at a time when the only occupants were the 15-year-old victim and her younger brother. There is evidence that defendant forced both children into a bedroom, ransacked drawers in another bedroom, then returned to the children. There is evidence that defendant forcibly removed the victim's clothes and then had sexual intercourse with the victim.

*Issues Answered Summarily*

■ (a) The prosecution failed to timely disclose to the defense attorney that samples of defendant's hair were being tested. Defendant complained of this nondisclosure immediately before the trial began. There is nothing showing that any test results were available at that time. The trial court ruled that if test results became available during the trial, the results would not be admitted as evidence. See R.Crim.Proc. 30. Defendant contends the test results may have been exculpatory, and because the test results were not timely disclosed, his conviction for C.S.P. should be reversed. We disagree.

The trial court ordered the prosecuting attorney to telephone the laboratory and find out what test results were available. The record as to the hair testing ends at that point. We do not know if there were any test results or, if there were, what the tests showed. Defendant did not seek a new trial on the basis of belatedly disclosed test results. See *State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979). Speculation that there may have been test results and that the test results may have been exculpatory does not establish a nondisclosure of exculpatory evidence.

■ (b) The victim testified that defendant's penis penetrated her vagina. On cross-examination, defendant sought to impeach the victim on the basis of an inconsistent statement as to penetration. Defendant contends the trial court erred in excluding evidence of the inconsistent statement.

The alleged inconsistent statement was an answer the victim made to a question asked the victim when the victim was interviewed at the police station. Defendant made a tender of proof as to the alleged inconsistency. This tender was on the basis of a purported transcript of questions and answers during the interview; it was a purported transcript because there was no evidence that the transcript was an accurate record of the interview. Defendant's contention is based on the following question and answer:

[Q] . . . The next question she [Linda Valdez who helped conduct the interview] asked is, "Okay, when this happened this morning, you knew that the man was inside you." You answered, "Uh-huh"—excuse me, "Huh-uh." Do you remember that?

A No.

The trial court disallowed the tender of proof; "after reading . . . [the transcript], I don't think there is an inconsistent statement."

We do not know what the trial court read, the transcript is not before us. Did the victim clarify her use of "Uh-huh" and "Huh-uh"? We do not know. Once the victim testified she did not remember the alleged inconsistent answer, defendant could have introduced evidence of an inconsistency pursuant to Evidence Rule 613(b). See *State v. Ross*, 88 N.M. 1, 536 P.2d 265 (Ct.App.1975). Defendant tendered no witnesses to establish an inconsistent answer and did not attempt to have the transcript included as a part of the tender.

There is no basis for holding the trial court erred in ruling there was no inconsistent statement.

■ (c) During closing argument, the prosecutor argued to the jury that there was no contradictory testimony as to what happened. Defendant objected to this argument, contending this was an improper comment in that it referred "to the fact that defendant didn't testify." The prosecutor's comment was not an improper reference to defendant's failure to testify. *State v. Aguirre*, 84 N.M. 376, 503 P.2d 1154 (1972); *State v. Montoya*, 91 N.M. 752, 580 P.2d 973 (Ct.App.1978). Defendant asks us to overrule these decisions. We have no authority to overrule *Aguirre*. *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973). Even if we had such authority, defendant has not demonstrated that the *Aguirre* rule should be changed.

■ (d) Defendant requested instructions on battery as a lesser offense included within the C.S.P.II offense, which was crim-

inal sexual penetration perpetrated during the commission of the burglary. Section 30–9–11(B)(4), N.M.S.A.1978. We need not decide whether battery is a lesser offense included within this particular C.S.P. offense. *State v. Ruiz*, 94 N.M. 771, 617 P.2d 160 (Ct.App.1980). No instruction on a lesser offense should be given when there is no evidence to suggest the lesser offense was the highest degree of the crime committed. *State v. Romero*, 94 N.M. 22, 606 P.2d 1116 (Ct.App.1980). There was no evidence to suggest that battery was the highest degree of defendant's offense. The requested instructions on battery were properly refused.

*C.S.P. Perpetrated in the Commission of Another Felony*

■ On appeal, defendant contends the trial court erred in failing to instruct the jury on C.S.P.III. See § 30–9–11(C), N.M.S.A.1978. Defendant did not request a C.S.P.III instruction and did not contend, in the trial court, that a C.S.P.III instruction should be given. See R.Crim.Proc. 41(d); *State v. Najar*, 94 N.M. 193, 608 P.2d 169 (Ct.App.1980). There is no appellate issue as to a C.S.P.III instruction.

Defendant's contention in the trial court was that no C.S.P.II instruction should be given. The C.S.P.II offense charged was criminal sexual penetration perpetrated "in the commission of any other felony", in this case, the felony of burglary. Section 30–9–11(B)(4), supra. Defendant argued:

[A] burglary is complete upon the completion of entry which is unauthorized and with the required intent. When the perpetrator of this crime entered the trailer, at the completion of the entry, the burglary was complete, so the criminal sexual penetration could not have occurred during the commission of a burglary. And, therefore, the state should not be entitled to an instruction of criminal sexual penetration in the second degree.

We answer this contention.

■ The crime of burglary is complete when there is an unauthorized entry with the requisite intent. *State v. Madrid*, 83 N.M. 603, 495 P.2d 383 (Ct.App.1972); *State v. Ford*, 81 N.M. 556, 469 P.2d 535 (Ct.App. 1970). Defendant correctly argues that the burglary was complete when he entered the trailer. This, however, does not answer the question of whether the C.S.P. offense was perpetrated "in the commission of" the burglary.

■ The phrase "in the commission of" in our C.S.P. statute has not been previously discussed in an appellate decision. The same phrase appears in § 30–2–1(A)(2), N.M.S.A.1978 (1981 Cum.Supp.); murder in the first degree includes murder perpetrated "in the commission of . . . any felony".

*State v. Flowers*, 83 N.M. 113, 489 P.2d 178 (1971), states:

[I]f a homicide occurs within the res gestae of a felony, the felony-murder provision of our statute is applicable, and whether the homicide occurred before or after the actual commission of the felony is not determinative of the applicability of the felony-murder provision.

*State v. Harrison*, 90 N.M. 439, 564 P.2d 1321 (1977), points out that for the homicide to come within the res gestae, the felony and the homicide must be part of one continuous transaction and closely connected in point of time, place and causal connection. *Harrison* held that causation must be the acts of defendant leading to the homicide without an independent force intervening. See also *State v. Perrin*, 93 N.M. 73, 596 P.2d 516 (1979); *State v. Adams*, 92 N.M. 669, 593 P.2d 1072 (1979).

The meaning of "in the commission of" in the felony-murder statute is also the meaning of "in the commission of" in the felony-C.S.P.II statute, § 30–9–11(B)(4), supra. Defendant's claim, that the C.S.P. offense was not perpetrated in the commission of the burglary, is without merit; the trial court did not err in instructing on C.S.P.II perpetrated in the commission of the burglary.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

DONNELLY and NEAL, JJ., concur.