889 P.2d 230

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Santiago ROMERO, a/k/a Jimmy
Romero, Defendant–
Appellant.**

**No. 15213.**

Court of Appeals of New Mexico.

Nov. 18, 1994.

Certiorari Denied Jan. 5, 1995.

Tom Udall, Atty. Gen., Daniel F. Haft, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Sue A. Herrmann, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

FLORES, Judge.

Defendant was convicted following a jury trial of one count of larceny over $250 and one count of aggravated burglary in violation of NMSA 1978, Sections 30–16–1 and –4(C) (Repl.Pamp.1994). Defendant appeals only his aggravated burglary conviction. On appeal Defendant raises the following interrelated issues: (1) that the district court erred in refusing to instruct the jury on the elements of simple burglary and simple battery as lesser included offenses of aggravated burglary and alternatively, (2) that, as a matter of law, the evidence is insufficient to support his conviction for aggravated burglary because the evidence failed to establish that he was leaving the burglarized area at the time the battery was committed. A third issue regarding plain error has been abandoned by Defendant. Other issues raised in the docketing statement and not briefed are also deemed abandoned. *State v. Fish*, 102 N.M. 775, 777, 701 P.2d 374, 376 (Ct.App.),

*cert. denied,* 102 N.M. 734, 700 P.2d 197 (1985). We affirm.

## BACKGROUND

On the evening of June 11, 1993, Defendant was playing pool at the Playtime Lounge in Tucumcari. The lounge was owned and operated by Irene Marcus and her son Randy Marcus. Ms. Marcus was working alone at the lounge that night. She had placed her purse in the office area which was located in back of the lounge. The office was not open to the public. The entryway to the office did not have a door but was partially covered by a drape. A sign located above the office entryway read, "Private–Keep Out". The only access to the office from the lounge area was through a hallway behind the bar.

Ms. Marcus was in the public area of the lounge when she observed Defendant coming out of the hallway from her private office. Defendant was holding Ms. Marcus' purse and going toward the exit. Ms. Marcus grabbed the purse and held onto it as Defendant pulled her towards the east exit doorway of the lounge. When Defendant reached the exit, he twisted the purse to one side breaking loose Ms. Marcus' grip. Ms. Marcus' arm was injured during the confrontation.

Following the close of the State's case, Defendant moved to dismiss the aggravated burglary charge on the ground that when Ms. Marcus attempted to recover her purse back from him, he was several feet away from the office area, and was therefore no longer entering or leaving the premises when the battery occurred. The district court denied the motion, finding that a prima facie case had been established. The defense then rested.

Defendant tendered jury instructions on simple burglary and simple battery, which were refused by the district court. The jury was ultimately instructed on the elements of aggravated burglary. *See* SCRA 1986, 14–1632. The jury returned guilty verdicts on both charges of larceny and aggravated burglary.

## DISCUSSION

Section 30–16–4 provides in relevant part:

Aggravated burglary consists of the unauthorized entry of any ... dwelling or

other structure, movable or immovable, with intent to commit any felony or theft therein and the person ...

. . . .

C. commits a battery upon any person while in such place, or in entering or leaving such place.

Whoever commits aggravated burglary is guilty of a second degree felony.

Burglary thus becomes "aggravated" if a battery is committed while "in," or while "entering" or "leaving" the unauthorized area of the burglarized premises.

Defendant does not dispute that the elements of burglary may be satisfied when there is an unauthorized entry in a separately secured area of an otherwise public building with intent to commit a theft or felony therein. *See State v. Sanchez,* 105 N.M. 619, 621–22, 735 P.2d 536, 538–39 (Ct.App.), *cert. denied,* 105 N.M. 618, 735 P.2d 535 (1987). Rather, Defendant first argues that whether he was leaving the burglarized premises within the meaning of Section 30–16–4(C) is a question of fact for the jury to decide, and therefore the district court erred in refusing his tendered jury instructions on simple burglary and simple battery. Alternatively, Defendant argues that he could not have committed aggravated burglary because, as a matter of law, he had already left the burglarized area when the battery occurred.

■ Assuming, without deciding, that under Section 30–16–4(C) burglary and battery are lesser included offenses of aggravated burglary, a jury instruction on a lesser included offense is required to be given only when (1) there is evidence which tends to establish the lesser offense; and (2) there is some view of the evidence which could sustain a finding that the lesser included offense was the highest degree of the crime committed. *Fish,* 102 N.M. at 779, 701 P.2d at 378; *State v. Martinez,* 98 N.M. 27, 29–30, 644 P.2d 541, 543–44 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982).

Here, it is undisputed that Defendant was beyond the unauthorized office area, but still within the public area of the lounge when the battery occurred. The dispositive question is therefore, whether Defendant was "leaving" the office area within the meaning of Section 30–16–4(C) when he committed the battery. As previously stated, Defendant argues that whether he was "leaving" is a question of fact for the jury to decide. Ordinarily the issue would be a fact question for the jury. In the circumstances of this case, however, no reasonable view of the evidence could sustain a finding that Defendant (1) committed a battery but (2) not while leaving the "place" of the burglary. Our conclusion rests on our interpretation of Section 30–16–4(C).

■ "Interpretation of a statute is a question of law[, not fact]." *Laguna Indus., Inc. v. New Mexico Taxation & Revenue Dep't,* 114 N.M. 644, 648, 845 P.2d 167, 171 (Ct.App.1992), *aff'd,* 115 N.M. 553, 855 P.2d 127 (1993). In construing a statute, the starting point in every case is an examination of the language utilized by the drafters of the act. *State v. Wood,* 117 N.M. 682, 685, 875 P.2d 1113, 1116 (Ct.App.), *cert. denied,* 117 N.M. 744, 877 P.2d 44 (1994). The main goal of statutory construction is to determine and give effect to the intent of the legislature. *Id.* (citing *Roth v. Thompson,* 113 N.M. 331, 332, 825 P.2d 1241, 1242 (1992)).

Defendant cites *Webster's International Dictionary* (2d ed. 1959) which he claims defines "leave" as follows: "To take leave of or withdraw oneself from, whether temporarily or permanently; to go away or depart from; as, to leave the house; hence *to arrive at the position of the last exterior contact with.*" (Emphasis added.) Relying on this definition, Defendant claims that because he no longer had any exterior or physical contact with the office area when the battery occurred, he was not "leaving," but had already "left" the unauthorized area where the burglary took place.

The State argues that Defendant's definition is inconsistent with the plain terms of the language itself. We agree. If external or physical contact is the standard to be used, as Defendant suggests, the first condition under Section 30–16–4(C), "while in such place," would be met under all circumstances and the second condition, "or in entering or leaving such place" would be rendered superfluous. We do not believe this is what the legislature intended. *See Lopez v. Employment Sec. Div.,* 111 N.M. 104, 106, 802 P.2d 9, 11 (1990) (legislative enactments are to be interpreted to accord with common sense and

reason); *Gonzales v. Lovington Pub. Sch.,* 109 N.M. 365, 370, 785 P.2d 276, 281 (Ct.App. 1989) (this Court will not interpret statutes in a manner that produces absurd results), *cert. denied,* 109 N.M. 262, 784 P.2d 1005 (1990).

Further, a more recent version of *Webster's New Collegiate Dictionary* 649 (1979), defines "leave" simply as "to go away from: DEPART." Similarly, the *Oxford American Dictionary* 377 (1980) defines "leave" as "to go away from, [or] to go away finally or permanently." Neither of the more recent definitions includes the language "to arrive at the position of the last exterior contact with." There does not appear to be any authority, in New Mexico or elsewhere, that interprets the meaning of the term "leaving" in this context. "When a term is not defined by the statute, a court may interpret the word in accordance with its ordinary meaning." *State v. Romero,* 111 N.M. 99, 100, 801 P.2d 681, 682 (Ct.App.), *cert. denied,* 111 N.M. 77, 801 P.2d 659 (1990).

Defendant further argues that the term "leaving" was intended by the drafters to be a restrictive term because the legislature did not use the more expansive language of the Model Penal Code, namely, "in flight after the attempt or commission." *See* Model Penal Code § 221.1(2) (Official Draft, A.L.I. 1985). Again, however, Defendant's position is inconsistent with the language of the statute because it would always require the person committing the battery to be inside the unrestricted area when the battery occurs. This would render the words "entering" or "leaving" superfluous.

Defendant, in support of his argument that he was erroneously prosecuted under the aggravated burglary statute, also relies on *State v. Gilbert,* 68 Wash.App. 379, 842 P.2d 1029 (1993). However, *Gilbert* is not persuasive because it construes Washington's first degree burglary statute, which has language different from New Mexico's aggravated burglary statute. *Id.* at 1031; *see* Wash.Rev. Code Ann. § 9A.52.020 (West 1986) (first degree burglary occurs when burglar of premises "assaults any person *therein*"). (Emphasis added.)

Defendant further relies on *State v. Holmes,* 451 So.2d 1175 (La.Ct.App.1984).

We do not believe that case supports Defendant's position. In *Holmes,* the Louisiana Court of Appeal interpreted an aggravated burglary statute with language identical to Section 30–16–4(C). *See* La.Rev.Stat.Ann. § 14:60 (West 1986). Although the *Holmes* Court did not specifically interpret the aggravated burglary sub-section in question in this case, it nonetheless stated that the purpose of the aggravated burglary laws was " 'to forestall the germination of a situation dangerous to the personal safety of the occupants.' " *Holmes,* 451 So.2d at 1179 (quoting *State v. Lozier,* 375 So.2d 1333, 1337 (La. 1979) (emphasis omitted)). The *Holmes* court also recognized that there is no distinction in "the danger to the occupant of a dwelling when [the occupant] confronts an armed burglar in the dwelling or confronts an armed burglar immediately adjacent to [the] dwelling." *Id.* at 1180. This, we believe, supports an interpretation of our statute that protects the safety of the occupants of the public portion of the building. It would be unreasonable to conclude that the legislature only intended to protect persons inside the unrestricted area, as Defendant suggests, and not also within the public area where potential victims are also likely to be found.

■ Finally, Defendant cites the general proposition that where there is a doubt about statutory construction, such doubt should be resolved in favor of lenity. However, a statute must be read with common sense, even in light of the rule of lenity. *State v. Hill,* 117 N.M. 807, 808–09, 877 P.2d 1110, 1111–12 (Ct.App.), *cert. denied,* 118 N.M. 90, 879 P.2d 91 (1994). Moreover, as the case relied on by Defendant recognized, the strict construction of a penal statute " 'does not mean that a forced, narrow, and overstrict construction should be applied to defeat the obvious intent of the legislature.' " *Gilbert,* 842 P.2d at 1032 (quoting *State v. Rinkes,* 49 Wash.2d 664, 306 P.2d 205, 207 (1957) (en banc)).

■ In view of the foregoing, we conclude that the legislature intended the word "leaving" to be given the ordinary meaning of "departing or going away from" and not "losing exterior contact with" as Defendant suggests. We further hold that where the burglarized area is an area of restricted access

in an otherwise public building, a person will be deemed to be leaving the area so long as that person is still in the public portion of the building. Thus, we reject Defendant's argument that the jury could have found that the battery occurred after Defendant was leaving the unauthorized premises and therefore the jury should have been instructed on simple burglary and simple battery.

■ Our interpretation of the statute also disposes of Defendant's contentions that there was insufficient evidence at trial to sustain his conviction for aggravated burglary. Defendant's principal contention in this regard is that there was insufficient evidence that the battery occurred while he was "leaving" the premises. Our rejection of Defendant's proposed narrow construction of the meaning of "leaving" disposes of that contention.

■ Defendant's only other contention is that being armed with a deadly weapon is the principal factor which elevates the penalty for stealing from a person or place from a third or fourth degree felony to a higher degree felony, and that the act of pulling the purse from Ms. Marcus "comes nowhere near the severity of being armed with a deadly weapon." In response, the State argues that the legislature made no distinction in severity of punishment between a defendant who commits a burglary while armed with a deadly weapon as opposed to an unarmed defendant who causes a·victim physical harm by committing a battery. We agree. After delineating in subsections (A), (B), and (C) what constitutes aggravating circumstances, the aggravated burglary statute expressly mandates that "[w]hoever commits aggravated burglary is guilty of a second degree felony." Section 30–16–4.

*CONCLUSION*

For the reasons discussed above, we affirm Defendant's conviction for aggravated burglary.

**IT IS SO ORDERED.**

DONNELLY and HARTZ, JJ., concur.