This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                    **NO. 32,109**

**JOSEPH HERNANDEZ,**

    Defendant-Appellant,

consolidated with

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                  **NO. 32,110 &**
                                            **NO. 32,170**

**CATHERINE HERNANDEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General

Santa Fe, NM

for Appellee

Aaron J. Boland, P.C.
Aaron J. Boland
Santa Fe, NM

for Appellant Joseph Hernandez

Aarons Law Firm PC
Stephen D. Aarons
Santa Fe, NM

for Appellant Catherine Hernandez

# MEMORANDUM OPINION

**KENNEDY, Chief Judge.**

{1}    Joseph Hernandez and Catherine Hernandez, a husband and wife, (collectively, Defendants) were convicted of Medicaid fraud and falsification of documents following a jury trial. Defendants had testified before the grand jury that indicted them.  At the time, Defendants were both represented by the same attorney. Following indictment, Joseph was compelled by the district court to retain other counsel.  Defendants waived any conflict that might have arisen from the joint representation.  No motion to sever was ever pursued to a ruling by Defendants, although severance appeared as an alternative remedy in a motion filed after the jury had been picked.  Defendants were tried together.  During the trial, the State

2

introduced Defendants' grand jury testimony over the objection of Defendants, who asserted their rights under *Bruton v. United States*, 391 U.S. 123 (1968). We will further develop the relevant facts as we address each issue in turn, as we will address Defendants' remaining issues. Defendants' appeals are consolidated for this Opinion. Defendants' briefs are virtually identical, and the issues presented are verbatim in each. We ultimately find no error in the district court's rulings and, therefore, affirm.

**I.     DISCUSSION**

**A.     Defendants' Motion in Limine Did Not Preserve the *Bruton* Issue for Appeal**

{2}     After jury selection and prior to the jury being sworn, Defendants filed their motion in limine to exclude the statements of Joseph under *Bruton.* The motion asserts that some prosecution exhibits "contain statements by [Joseph] that the government believes inculpate . . . Catherine." The motion specifies no particular objectionable statements and states no more than "[i]t is not clear at this time whether the prosecution intends to introduce any statements by . . . [Joseph] but, if they do so, counsel intends to raise this motion again orally to deal with the specific statement being introduced."

{3}     The motion concludes by requesting alternative relief that (1) "any statements by . . . [Joseph] as substantive evidence in the prosecution case-in-chief" be excluded, (2) the trials be severed, or (3) the district court "grant a limiting instruction" to the

effect that any statement by Joseph was not admitted evidence against the non-declarant and could not be considered as such. Defendants' appeal addresses neither any denial of severance nor a limiting instruction, and we will not discuss them further. Additionally, Defendants do not raise, and we do not consider, any other objections to introduction of the grand jury testimony than those based on *Bruton* and the Confrontation Clause.

{4}     Ordinarily,"including the terms '*Bruton*' and 'Confrontation Clause' in [the defendant's] objections, . . . effectively put the court on notice of the specific nature of [the] objection and the impropriety of allowing a joint trial where the statements of [the] co[-]defendants would be offered as evidence." *State v. Lopez*, 2007-NMSC-037, ¶ 16, 142 N.M. 138, 164 P.3d 19. Such statements alone might therefore suffice to preserve the issue. However, "the manner in which the relief is requested and the nomenclature used is not significant. . . . The substance of the motion, not its title, controls." *State v. Paiz*, 2011-NMSC-008, ¶ 31, 149 N.M. 412, 249 P.3d 1235 (alteration, internal quotation marks, and citations omitted). Discussions of the grand jury testimony produced nothing more than cursory references to "*Bruton* issues" and never included subsequent references to specific statements.

{5}     Defendants' motion serves as no more than a notice of impending objections yet to be made. The motion identifies no specific statement or evidence with which

4

it is concerned, save any statements by a co-defendant. Such statements, as explained below, are an overbroad and ineffective invocation of *Bruton*. At the time the motion first arose for hearing, counsel for Joseph stated to the court that there existed "sort of a *Bruton* issue. I don't know if they're going to introduce documents that were stated by one person as opposed to the other." The district court pointed out that, prior to the jury being sworn, "it's a little late to be filing *Bruton* motions; I mean that should've been the basis for some motion to sever." The district court concluded: "If any *Bruton* issues come up, let me know."

{6}     The State subsequently indicated that it intended to introduce documents prepared for Medicaid reimbursement by Catherine, as well as both Defendants' grand jury testimony, to which defense counsel stated: "We'll object. I guess we'll just say same objection." The district court responded that Defendants would have to "develop the argument" to explain why the "*Bruton* issues" had not been raised earlier, suggested that there might be a waiver issue because of the lateness of the motion, and concluded that, if problems were not anticipated, it might be "a different story." Defense counsel responded by pointing out that Defendants were "given the grand jury testimony, and I was there for both of them, so it's not like a surprise." The district court concluded: "There may be issues. OK, we'll deal with them as we get to them. Anything else?" Defense counsel replied: "Not at this time."

**{7}** Defendants' assertion that the district court ruled on the admissibility of the testimony seems overblown. The conversation quoted above is hardly a development of the issues. The district court clearly stated that defense counsel would have to develop his argument and that it did not have enough information to decide the *Bruton* issue. Defendants did not pursue the issue. The implication, therefore, is that Defendants' motion was both contingent and insufficient to preserve the issue for appeal.

**{8}** Given the contingent nature of the motion, any claim that the motion or Defendants' pretrial argument preserves the issue for appeal must fail. *See* Rule 12-216(A) NMRA ("To preserve a question for review[,] it must appear that a ruling or decision by the district court was fairly invoked[.]"); *see also State v. Vandenberg*, 2003-NMSC-030, ¶ 52, 134 N.M. 566, 81 P.3d 19 ("In analyzing preservation, we look to the arguments made by [the d]efendant below."); *State v. Jacobs*, 2000-NMSC-026, ¶ 12, 129 N.M. 448, 10 P.3d 127 ("In order to preserve an issue for appeal, it is essential that a party must make a timely objection that specifically apprises the [district] court of the claimed error and invokes an intelligent ruling thereon."). Defendants' motion consisted of nothing but a general objection to "any statements by . . . [Joseph] as substantive evidence in the prosecution case-in-chief[.]" Furthermore, it was contingent on the State's belief that the statements were

6

inculpatory. This is insufficient to apprise the court of any problems capable of resolution. We therefore hold that the motion in limine did not preserve the issue.

{9} Defendants exacerbate the motion's failings by making no reference to any other objection to any specific statement made by either Defendant, which inculpated the other. Because the motion fails to preserve the *Bruton* issue, Defendants must demonstrate that individual objections made during trial, to specific evidence and sufficiently preserved, can satisfy the standard for preservation. Defendants incorrectly insist that "any statements" by co-defendants implicate *Bruton*, and we must therefore clarify what sort of statements might implicate *Bruton*.

**B.    A *Bruton* Violation Requires More Than Just a Co-Defendant's Statement**

{10} Any analysis of a *Bruton* issue, due to a Confrontation Clause violation, or the denial of a motion to sever because of the admissibility of co-defendants' statements, must begin by examining the statements themselves followed by an examination of their impact. *See Lopez*, 2007-NMSC-037, ¶ 17 (conducting an analysis of a co-defendant's statements and then assessing the impact those statements had on the jury).

{11} While *Bruton* applies only to testimonial statements, *State v. Gurule*, 2013-NMSC-025, ¶ 40, 303 P.3d 838, and testimony before a grand jury is unequivocally testimonial, *Crawford v. Washington*, 541 U.S. 36, 68 (2004), Defendants acknowledge that statements that are not inculpatory of the complaining

defendant do not implicate *Bruton*. *See Bruton*, 391 U.S. at 137 (holding that statements offended the Confrontation Clause when they implicated the defendant); *see United States v. Clark*, 717 F.3d 790, 814 (10th Cir. 2013) ("*Bruton*'s rule is a narrow one; it applies only when the co-defendant's statement is so inculpatory as to the defendant that the practical and human limitations of the jury system cannot be ignored." (internal quotation marks and citation omitted)). Additionally, the *Bruton* rule does not apply to a statement that is not "incriminating on its face, and [becomes] so only when linked with evidence introduced later at trial." *Richardson v. Marsh*, 481 U.S. 200, 208 (1987).[1]

{12}     While the *Bruton* court spoke of the use of a statement that would constitute "a substantial threat to [the defendant's] right to confront the witnesses against him," we have previously established that such a "substantial threat" requires reversal only when there is prejudice. 391 U.S. at 137. "The prejudice . . . must be both actual, not based on pure conjecture, and substantial in its impact on the defense. . . . Prejudice, though conceivable, remains speculative unless there is an appreciable risk that the

---

[1]Such a statement must be directly inculpatory, as opposed to merely inferentially inculpatory, of the non-declarant defendant. A statement that is inferentially inculpatory that "[does] not refer directly to the defendant and . . . [becomes] incriminating 'only when linked with evidence introduced later at trial.' " *Gray v. Maryland*, 523 U.S. 185, 196 (1998) (citing *Richardson*, 481 U.S. at 208-09) ("[E]vidence requiring linkage differs from evidence incriminating on its face in the practical effects which application of the *Bruton* exception would produce.").

jury convicted the defendant for illegitimate reasons." *State v. Padilla*, 1998-NMCA-088, ¶ 14, 125 N.M. 665, 964 P.2d 829 (citations omitted).  Thus, not every statement made by a co-defendant implicates *Bruton*.  Nowhere in the record at trial, nor in their briefing, have Defendants pointed to any specific statement made by either Defendant that are directly inculpatory of the other.  Defendants' reliance on the delusive belief that a non-testifying co-defendant's out of court statement is categorically inadmissible is not only unsupported, but not capable of review here.

{13}    As Defendants recognize, in a case where it might be a constitutional error to admit the directly inculpatory statements of one co-defendant against the other, the prejudice from such an error must be harmful beyond a reasonable doubt.  *Chapman v. California*, 386 U.S. 18, 23-24 (1967); *Lopez*, 2007-NMSC-037, ¶ 22.  Subjecting *Bruton* violations to harmless error analysis thus precludes per se grounds for reversal and requires some showing of prejudice to the defendant from the admission of the statement.  *Brown v. United States*, 411 U.S. 223, 231-32 (1973) ("We reject the notion that a *Bruton* error can never be harmless.  [A] defendant is entitled to a fair trial but not a perfect one, for there are no perfect trials." (emphasis added) (internal quotation marks and citation omitted)).  Without Defendants specifically providing some showing of prejudice, we cannot determine whether such prejudice is harmless beyond a reasonable doubt.

**C.     Defendants Fail to Demonstrate That Any Statement Made by Either Runs Afoul of *Bruton***

{14}     In light of Defendants' failure to preserve the *Bruton* issue through their motion and general pretrial assertions of inadmissibility, we now look to Defendants' briefs, as well as their statements at trial, to determine whether the admission of particular statements at trial were adequately objected to by defense counsel and ruled upon by the district court.  The only citations to specific statements that Defendants have provided are cited in support of Defendants' assertion that an evidentiary basis existed to give an instruction on mistake of fact.[2]  Those statements are exclupatory in nature. No other statement by either Defendant is provided to us by counsel.

{15}     Neither the motion nor Defendants' briefs informs us what it is about the grand jury testimony that is directly inculpatory.  "We will not review unclear arguments, or guess at what [their] arguments might be."  *Headley v. Morgan Mgmt. Corp.* 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076; *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."); *State v. Dominguez*, 2014-NMCA-064, ¶ 26, 327 P.3d 1092 (recognizing that this Court will not search the record to find facts to support a defendant's argument), *cert. denied*,

---

[2]The majority of these citations are buried in a footnote that contains no quoted language and merely provides string cites with unhelpful parentheticals, such as "Exhibit 29" and "Catherine's notations no objection."

10

2014-NMCERT-005, 326 P.3d 1111. We have not been given an adequate factual basis to conclude Defendants were prejudiced by the admission of the grand jury testimony, much less conclude that the statements admitted were harmful beyond a reasonable doubt.

{16} To conclude, Defendants have failed to direct us to a place in the record where an allegedly prejudicial statement, given as grand jury testimony, was objected to in a way that identified the specific grounds for the objection to which the court made a discernable ruling or prejudiced either Defendant. Therefore, there is nothing for us to reverse. In this case, the initial motion and general objection to the grand jury testimony was contingent and evoked no ruling from the court other than an agreement to hear specific subsequent objections when they might arise. As a result, the absence of any showing by Defendants of specific subsequent objections to specific inculpatory statements requires us to hold that Defendants did not preserve any of their *Bruton* argument for appeal.

**D. It Was Not Error Not to Give Mistake of Fact and Good Faith Instructions**

{17} Defendants' requested jury instructions, with regard to the elements of the crimes with which they were convicted, appear to have been identical and jointly submitted. Defendants argue that the district court erred in rejecting jury instructions they tendered before and after trial concerning the defenses of mistake of fact and good faith as they applied to Medicaid fraud. At trial, Catherine's attorney argued that

11

the mistaken fact in which she had an honest and reasonable belief was "[t]hey were authorized or she was authorized to receive the Medicaid funds in question." In support of this contention, her attorney cited to her, presumably exculpatory, grand jury testimony to support the assertion that she had made a mistake in her preparation of bills for her son's care because of a lack of training and that the mistake was unintentional. Counsel argued further that, as a result of the mistakes in billing, "they believed that these bills, and if you look at the . . . requested [jury instruction], they were authorized to receive the Medicaid funds in question under an honest and reasonable belief in the existence of those facts. I should say she thought they were authorized since she was filling out the forms."

{18} When asked about Joseph's evidence concerning mistake of fact, his attorney stated: "He basically said [he] trust[s Catherine]." The district court denied the instruction, stating that the mistake of fact had to nullify one of the elements of the offense and that being authorized to receive benefits for filling out the forms was not a mistake of fact in light of claiming benefits for someone who did not live in the house and indicated that the defense could argue that there was no criminal intent under the general criminal intent instruction that it would give. Because there is no uniform jury instruction for Medicaid fraud, we first turn to the statute and the common law to determine the elements of the offense.

**E.     Medicaid Fraud is a Specific Intent Crime**

12

{19} Defendants argue that the district court erred in denying its jury instructions, presenting a mixed question of law and fact that we review de novo. *State v. Bent*, 2013-NMCA-108, ¶ 14, 328 P.3d 677, *cert. denied*, 2013-NMCERT-012, 321 P.3d 126. Specifically, they argue that the elements of Medicaid fraud include an intent to deceive or cheat, therefore requiring an instruction on the defenses of good faith and mistake of fact. The State contends that the crime is a general intent crime. We find neither contention supported in the law.

{20} "A 'specific intent crime' is defined as one for which a statute expressly requires proof of 'intent to do a further act or achieve a further consequence.' " *State v. Brown*, 1996-NMSC-073, ¶ 22, 122 N.M. 724, 931 P.2d 69. We recently observed that "Medicaid fraud consists of[] presenting or causing to be presented for allowance or payment with intent that a claim be relied upon for the expenditure of public money any false, fraudulent, excessive, multiple, or incomplete claim for furnishing treatment, services, or goods." *State ex rel. King v. Behavioral Home Care, Inc.*, 2014-NMCA-___, ¶ 7, ___ P.3d ___ (No. 31,682, June 9, 2014) (alterations, internal quotation marks, and citation omitted). Thus, an element of the offense is that the provider must intend for the New Mexico Human Services Department to rely on the false or fraudulent claims allegedly made for purposes of reimbursement. *Id.* ¶ 15. This follows our holding in *State v. Dartez*, 1998-NMCA-009, ¶ 40, 124 N.M. 455, 952 P.2d 450 (holding that a jury instruction for Medicaid fraud must be supported by

13

evidence that the defendant provided a false claim for payment with intent that a claim be relied upon for the expenditure of public money).

{21}    Defendants complain of the failure of the Medicaid fraud instruction given by the district court to also include the specific "[*intention*] *to deceive or cheat*" language they requested.  Medicaid fraud is not general fraud and is predicated on different elements that were chosen by the Legislature. Defendants provide us no authority that requires us to read the "intent to cheat or deceive" language from the general fraud instruction into the Medicaid fraud instruction.[3] We therefore assume that none exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329.  This Court will not consider propositions that are unsupported by citation to authority. *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969.   Additionally, "[w]e do not read words into the statutes, particularly when the [L]egislature has seen fit not to include them." *State v. Elliott*, 2001-NMCA-108, ¶ 14, 131 N.M. 390, 37 P.3d 107; *see State v. Gutierrez*, 1985-NMCA-034, 102 N.M. 726, 699 P.2d 1078) (stating that, when a statute makes sense as written, this Court does not need to read words into it).

---

[3]Although Defendants attempt to prove this point by citing to cases generally holding that statutory elements of any specific intent was be part of the jury instructions. The particular specific intent that applies was part of the jury instruction that was given as noted below.

14

{22}    A jury instruction for Medicaid fraud under NMSA 1978, Section 30-44-7(A)(3) (2003) does not require the words "intent to cheat or deceive" to accurately state the law. The statute is sufficiently direct in stating the specific intent with which the crime must be committed. "Instructions are sufficient if, when considered as a whole, they fairly present the issues and the applicable law." *State v. Lucero*, 1990-NMCA-042, ¶ 8, 110 N.M. 50, 791 P.2d 804. Following the instructions given, a reasonable juror could not have convicted either Defendant without a finding of the requisite specific intent. Whether the fraud instruction was inadequate, as is argued by Defendants, is of no concern to our analysis of the instruction on Medicaid fraud because neither Defendant was convicted of general fraud. *State v. Ramirez*, 1972-NMCA-108, ¶ 3, 84 N.M. 166, 500 P.2d 451 (holding that requisite intent for the charge of which the defendant was not convicted is not pertinent to the remaining charge). We will address in passing the deficiency of Defendants' requested instruction on Medicaid fraud and move on to their argument that a mistake of fact instruction should have been given.

**F.    Defendants' Requested Instruction Did Not Properly State the Elements of Medicaid Fraud and No Instruction on Mistake of Fact Was Needed**

{23}    Defendants' tendered instruction stated:

> For you to find . . . [D]efendant[s] . . . guilty of Medicaid [f]raud as charged . . . , the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

15

1.       [D]efendant[s] presented, or caused to be presented, a false or fraudulent claim for Medicaid payments.

2.       The claim contained a false statement that services had been provided.

3.       The claim was made for the purpose of obtaining money.

4.       [D]efendant[s] knowingly and willfully acted with fraudulent intent to cheat or deceive the State of New Mexico Medicaid Program.

5.       [D]efendant[s] did not act under a mistake of fact.

6.       The amount of the false claim exceeded the sum of $20,000[.]

7.       This happened in New Mexico on or betweeen the 26th day of April 2006 and the 16th day of May 2007.

{24}     In light of the foregoing discussion, the deficiencies of Defendants' proposed Medicaid fraud instruction are manifest. It misstates the statutory element *actus reus* of "presenting or causing to be presented" a claim "for allowance or payment" with the "intent that a claim be relied upon for the expenditure of public money" and ignoring the nature of the claim as "false, fraudulent, excessive, multiple[,] or incomplete claim for furnishing treatment, services[,] or goods" as required under Section 30-44-7(A)(3). In contrast, all of the proper elements were included in the instruction the district court read to the jury, which we have found to be a sufficient statement of the law. The instruction given to the jury stated:

        For you to find . . . [D]efendant[s] guilty of [Medicaid fraud] as charged . . . , the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

16

1.     [D]efendant[s] presented or caused to be presented for allowance or payment a claim[.]

2.     [D]efendant[s] intended that a claim be relied upon for the expenditure of public money[.]

3.     The claim was false, fraudulent, excessive, multiple, or incomplete claim for furnishing treatment, services, or goods[.]

4.     This happened in New Mexico on or between February 2008 and February 2010.

**G.    Defendants' Argument Concerning an Element of Knowledge Fails**

{25}    Defendants further assert that "[i]n instructing the jury, the court also did not include any element of knowledge" and direct us to the instructions given the jury as to Medicaid fraud and falsification of documents. They next assert that "the statute requires knowing it to be in excess of amounts authorized under the program" and provide the specific intent for Medicaid fraud, though citing no statute. Defendants then argue that the denied instruction "would have informed that jury of the requisite knowledge and a specific intent to cheat or deceive." As stated above, we will not concern ourselves with the fraud instruction. The falsification of documents instruction given to the jury directly tracks the statute. Unlike the crime of falsification of documents, there is no specific element of knowing conduct contained in the subsection of the Medicaid fraud statute under which Defendants were convicted. Our Supreme Court distinguishes knowing conduct as conscious behavior that exists between general criminal intent and specific intent. *See State v. Ramos,*

17

2013-NMSC-031, ¶ 28, 305 P.3d 921. For the crime of Medicaid fraud, such language would have been superfluous. For falsification of documents, however, it was part of the instruction properly given to the jury.

{26} Here, we pause to comment on an unacceptable aspect of Defendants' briefing that must change. Defendant quoted without citing a phrase from Section 30-44-7(A)(1)(c): "knowing it to be in excess of amounts authorized." That section of the statute is not one under which Defendants were convicted. Similarly, Defendants cite to Section 30-44-7(A)(1)(a) and argue that the Medicaid fraud statute requires taking "anything of value with intent to influence a decision or commit a fraud." In doing so, however, they quote a section in the statute that criminalizes accepting a kickback in connection with furnishing services for which Medicaid payments might be received. This, again, is a section of the Medicaid fraud statute that has no application to this case. *See* § 30-44-7(A)(1)(a). Counsel supported his falsification of documents argument by supplying uncited quotations from a section of the Medicaid fraud statute that was not applicable. Such conduct is unacceptable, as is citing to aspects of specific intent that have no application to the case at hand. Counsel is cautioned to avoid such practices in the future.

**H.    Instructing on Mistake of Fact is Unnecessary When Instructions Contain Correct Statements of Intent**

18

{27}    We have previously held that an instruction on mistake of fact is unnecessary where another instruction clearly articulates the intent element that a jury must find in order to convict. *See, e.g.*, *State v. Venegas*, 1981-NMSC-047, ¶ 9,  96 N.M. 61, 628 P.2d 306 ("Ordinarily, a defendant is not entitled to a specific instruction where the jury has already been adequately instructed upon the matter by other instructions."); *State v. Griscom*, 1984-NMCA-059, ¶ 14, 101 N.M. 377, 683 P.2d 59 ("Our reading of *Venegas* leads us to conclude that whenever an intent instruction involving the defendant's mental state is given, the mistake of fact concept is automatically included and does not merit a separate instruction.").  Additionally, in *State v. Stefani*, we held that no error occurred when the district court gave a general intent instruction, as well as the elements of the offense instruction, even though the crime charged was a specific intent crime.  2006-NMCA-073, ¶ 29, 139 N.M. 719, 137 P.3d 659.  When an instruction that sufficiently delineates the elements of a crime, including specific intent is given, it is not error to also give a general criminal intent instruction.  *State v. Gee*,  2004-NMCA-042, ¶ 16, 135 N.M. 408, 89 P.3d 80.

{28}    Defendants misleadingly cite to *State v. Bunce*, claiming that a conviction for embezzlement and fraud was reversed because the district court did not instruct the jury on mistake of fact.  1993-NMSC-057, 116 N.M. 284, 861 P.2d 965.  In *Bunce*, not only was there no conviction for fraud, the Supreme Court reasoned that "the [district] court need not give a mistake of fact instruction where the intent element of

19

the crime is adequately defined by the other instructions given by the [district] court." *Id.* ¶ 9. Similarly, Defendants' view of *Griscom* is excessively narrow, asserting that *Griscom* affirmed convictions "despite the absence of a mistake of fact instruction because six of the instructions included the language 'intending to deceive or cheat.'" However, "deceive or cheat" language is not the crux of the *Griscom* opinion. We held generally that "whenever an intent instruction involving the defendant's mental state is given, the mistake of fact concept is automatically included and does not merit a separate instruction." 1984-NMCA-059, ¶ 14. Here, having held that the instruction given correctly identified the specific intent required to commit the crime of Medicaid fraud, we hold that no mistake of fact instruction was required, and it was not error to give a general intent instruction.

**I.     A Good Faith Instruction Was Not Warranted**

{29}     Defendants' last argument is that the district court erred in refusing their tendered instruction on good faith. There is no New Mexico Uniform Jury Instruction on good faith, and Defendants based theirs on instructions from the Tenth Circuit dealing with false statements and the Eighth Circuit dealing with income tax and fraud cases. Defendants provide no New Mexico citations to support their assertion. Turning to the portion of the transcript cited by Defendants, it is apparent that the phrase "good faith" was used by Defendants' counsel objecting to the district court's ruling that "mistake of fact is not a defense[.]" There is no specific reference in the

20

transcript to their requested instruction. Because the issue is unsupported either legally or factually, we decline to address it.

**J.      It Was Not Error for the District Court to Allow Transcripts of Defendants' Grand Jury Testimony to go to the Jury**

{30}      Defendants assert that, because "[c]ourts uniformly exclude demonstrative evidence in general, and witness transcriptions in particular[,]" allowing jurors to have transcripts of the testimony given to the grand jury and played to the jury during trial while they read along was reversible error. Such a statement, however, misstates the law they cite in support of the assertion. *See United States v. Brown*, 451 F.2d 1231, 1233-34 (5th Cir. 1971) (concluding that submitting to the jury a "fair sized manila envelope" containing a memorandum report and inventory of evidence against the defendant was error which influenced the jury); *United States v. Pendas-Martinez*, 845 F.2d 938, 941 (11th Cir. 1988) (holding that the witness's report, which constituted a summary of the case, was improperly submitted to the jury); *Holland v. United States*, 348 U.S. 121, 128 (1954) (cautioning against allowing the jury to "take into the jury room the various charts summarizing the computations" in a tax evasion case without first issuing "guarding instructions"); *Hobbs v. Harken*, 969 S.W.2d 318, 326-27 (Mo. App. 1998) (finding that summary of calculations made by a witness constituted a non-testimonial exhibit and was therefore properly sent to the jury, but

21

cautioning against repetition of select portions of the trial testimony because it could lead to confusion or unwarranted advantage).

{31}    Defendants cite only to unpersuasive and out-of-state authority in support of their argument that the grand jury transcripts were improperly sent to jury deliberations.  In addition, none of the authorities cited pertain to transcripts, much less transcripts of grand jury testimony.  Such citations are neither relevant nor persuasive and are unhelpful to our analysis here.

{32}    Defendants next assert that "the issue is whether the introduction of constitutionally prohibited evidence was harmless" error beyond a reasonable doubt.  Such a statement ignores Defendants' burden on appeal.  A harmless error inquiry on appellate review of a criminal case places the initial burden to demonstrate prejudice on the defendant.  *State v. Holly*, 2009-NMSC-004, ¶ 28, 145 N.M. 513, 201 P.3d 844; *see State v. Duran*, 1988-NMSC-082, ¶ 12, 107 N.M. 603, 762 P.2d 890 ("To establish a due process violation, and thus reversible error, the defendant must demonstrate prejudice."), *superseded by rule as stated in State v. Gutierrez*, 1998-NMCA-172, 126 N.M. 366, 969 P.2d 970).  If the defendant demonstrates prejudice, the burden then shifts to the state to show that the error was "harmless beyond a reasonable doubt."  *State v. Alvarez-Lopez*, 2004-NMSC-030, ¶ 25, 136 N.M. 309, 98 P.3d 699 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993)).

22

**{33}** Despite laying out the standard for harmless error in some detail, Defendants fail to identify, with any particularity, which of the statements admitted by the district court were prejudicial. As explained in detail above, Defendants have failed to specifically point to any inculpatory statements in the admitted grand jury testimony. They have therefore failed to demonstrate prejudice. Absent some showing of prejudice, we need not evaluate whether the State met its burden of proving harmlessness beyond a reasonable doubt. Therefore, because of the lack of local authority cited in support of Defendants' argument, coupled with their failure to demonstrate prejudice, we hold that the district court did not err in allowing the transcripts to go to the jury.

**II.    CONCLUSION**

{34}    For the reasons stated above, we affirm the district court.

{35}    **IT IS SO ORDERED.**


                                    _____
                                    **RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**J. MILES HANISEE, Judge**